WITHERS and others *vs.* THE NEW JERSEY STEAMBOAT COMPANY.

In an action by the plaintiffs as owners of ninety-one kegs of tobacco, to recover the damages sustained by the tobacco while in the defendants' possession as a common carrier, it appeared that the tobacco had been sold by the plaintiffs to *arrive*—sixty-seven kegs to S. & Co., and twenty-four kegs to C. & Co. The whole was consigned to S. & Co., but they refused to take the tobacco in fulfillment of the sale to them, on account of its damaged condition, and so notified the plaintiffs. C. & Co. took the twenty-four kegs at the contract price, sixty-two and a half cents per pound, but it did not appear that it was taken on account of that contract.

*Held* that these facts did not warrant the objection that the tobacco was delivered by the plaintiffs to the purchasers, and that no right of action for the recovery of damages remained in the plaintiffs.

That the tobacco having been damaged before it reached the purchasers, the delivery could not be claimed as a performance of a contract for the delivery of sound tobacco.

*Held also*, that there was no ground for objecting that S. & Co. could not act as agents or consignees of the tobacco for the account of the plaintiffs; they having notified the plaintiffs that they did not receive it as purchasers.

THIS was an appeal, by the defendants, from a judgment rendered at the circuit, on a trial by the court without a jury. The opinion states the facts.

Withers *v.* New Jersey Steamboat Co.

*Chas. Jones,* for the appellants.

*J. E. Burrill,* for the respondents.

LEONARD, P. J. Appeal from a judgment rendered at the circuit. Trial by the court, without a jury. Action to recover damages sustained on ninety-one kegs of tobacco, transported by the defendants, as common carriers, from Albany to New York, in consequence of the negligence of the defendants. The allegations of the complaint were all put at issue by the answer, in respect to the title of the plaintiffs, the negligence of the defendants, and the damage sustained.

The evidence showed that the tobacco was received by the defendants, on board the steamer St. John, at Albany, in good order, and brought to the city of New York, where it arrived at an early hour in the morning, and was landed on the dock. It was raining, at the time, and the tobacco was exposed for several hours. It was imported from Canada, and the consignees were unable to remove it until a custom house permit was obtained, after the lapse of several hours. The defendants did not notify the consignees of the arrival of the tobacco, but their carman saw it on the dock, at about eight o'clock in the morning ; at which time he notified the agents of the defendants that it was suffering damage from the rain, and required covering, which was then partially and insufficiently done. The carman then proceeded to the consignees and notified them of its arrival, at about 9 o'clock, A. M. and the tobacco was then removed with all the expedition that the entries at the custom house would admit, but not till large damages had occurred. The defendants were notified of the injury sustained, and requested to examine the tobacco. A survey was held, and the defendants notified, but they did not attend. The merchants who surveyed it reported it damaged ; and they testified that the value when it arrived, if it had been in good order, was one dollar per pound, and that in its damaged condition it was worth sixty-two and a half cents.

It was not sold until Sept. 8th, although the damage occurred July 25th, 1864.

During that time the market for sound tobacco fell off ten to fifteen per cent, but the ratio on damaged tobacco would be less. Some thought it would have brought more if it had been sold at once, and others thought it brought as much when it was sold as it would have done if sold earlier. There were some negotiations by the defendants for taking the tobacco for their own account, which delayed the sale till after the middle of August.

The tobacco had been sold by the plaintiffs to arrive—sixty-seven kegs to Smith & Co. and twenty-four kegs to Connolly & Co.

Smith & Co. were consignees of the whole of it, but they refused to take the tobacco, in fulfillment of the sale to them, on account of its damaged condition, and so notified the plaintiffs. Connolly & Co. took the twenty-four kegs at the contract price— 62½ cents per pound, agreed on in March preceding—but it does not appear that it was taken on account of that contract. The evidence does not appear to be directed to that question, as to Connolly & Co. but it cannot be credited that they would receive a damaged article, injured to the extent of almost one-half, as in fulfillment of a contract for the delivery of sound tobacco. The evidence does not show it to have been received on the March contract.

These facts do not warrant the point made by the defendants' counsel, that the tobacco was delivered by the plaintiffs to the purchasers, and that no right of action for the recovery of damages remained in the plaintiffs. The tobacco which the plaintiffs agreed to deliver was to be a sound article. Before it reached the purchasers it was damaged, and could not be claimed as a performance of a contract for the delivery of sound tobacco.

Nor is there any ground for objecting that Smith & Co. could not act as agents or consignees of the tobacco for the.

account of the plaintiffs. That firm notified the plaintiffs, without delay, that they did not receive it as purchasers.

As the defendants landed the tobacco at an unseasonable hour, they could not have reasonably expected the consignees to be on hand to receive it instantly; especially as they had not notified them that it had arrived, or was being landed; and the article, being in bond, also would necessarily require some delay, after the commencement of business hours, for the purpose of transacting the custom house business.

The evidence proved the damage to the extent found by the judge.

The complaint demanded $7147.38 damages, and the judge allowed $8887.90, besides interest.

The complaint must be deemed amended, to conform to the fact found, in this respect.

The judgment should be affirmed, with costs.

J. C. SMITH, J. concurred.

SUTHERLAND, J. (dissenting.) It appears, from the evidence of James R. Smith, of the firm of Wm. H. Smith & Sons, that twenty-four kegs of the tobacco had, in March or April, previous to the arrival of the tobacco in New York, been sold by Smith & Sons, for the plaintiffs, at sixty-two and a half cents per pound, to Connolly & Co. a New York firm, and that Connolly & Co. after the arrival of the tobacco in New York, were notified of its arrival, and of its damaged condition, and were told they need not take the twenty-four kegs in its damaged condition, but that, nevertheless, Connolly & Co. did take the twenty-four kegs, at the contract price; and the presumption is that they have paid the plaintiffs, or their agents, Smith & Sons, for the twenty-four kegs, at the contract price. If this evidence is true, and there is nothing in the case to contradict or in any way to impeach it, and it would appear to be a conceded fact, then the plaintiffs have received, or are entitled to receive, from Connolly & Co.

the full contract price of the twenty-four kegs ; and if so, it is difficult to see how, *as to the twenty-four kegs,* the damage to the tobacco was, or has been, any damage *to the plaintiffs.*

I think the judgment should be reversed and a new trial ordered, unless the plaintiffs consent to deduct from the judgment the difference as to the twenty-four kegs, between sixty-two and a half cents and a dollar per pound.

The net weight of the twenty-four kegs is stated by a witness (James R. Smith) to be 5816½ pounds.

Judgment affirmed.

[New York General Term, April 1, 1867. *Leonard, James C. Smith* and *Ingraham,* Justices.]